IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MONTYE BENJAMIN, on her own behalf as administratrix for the estate of her son Jayvis Ledell Benjamin,<br><br>        Plaintiff,<br><br>    v.<br><br>LYNN THOMAS, individually, CITY OF AVONDALE ESTATES, THOMAS GILLIS, in his official capacity, GARY L. BRODEN, in his official capacity as Chief of Police, Avondale Estates Police Department,<br><br>        Defendants. | 1:16-cv-1632-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendants Lynn Thomas, Thomas Gillis, Gary L. Broden, and City of Avondale Estates' (collectively, "Defendants") Motion to Dismiss [12] Plaintiff Montye Benjamin's ("Plaintiff") Complaint [1].

**I.    BACKGROUND**

    A.    <u>Facts</u>

On January 18, 2013, Avondale Estates Police Sergeant Lynn Thomas observed a 2003 Ford Mustang fail to stop at the intersection of Covington

Highway and Kensington Road in Avondale Estates, Georgia.  (Compl. ¶ 25).  Sergeant Thomas followed the Mustang onto Kensington Road and found the Mustang in the yard at 33 Kensington Road.  (Compl. ¶ 26).  The Mustang had left the roadway, struck a telephone pole, and came to rest in the yard.  (Compl. ¶ 27).  Several neighbors emerged from their homes to view the crash.  (Compl. 28).

Sergeant Thomas stopped his police vehicle in the roadway in front of 3113 Kensington Road and approached the vehicle.  (Compl. ¶ 29).  The driver of the Mustang, Jayvis Ledell Benjamin, was injured as a result of the accident and began to exit the vehicle.  (Compl. ¶ 30).  Plaintiff alleges that "[a]t no time did Jayvis Ledell Benjamin make any sudden movements or gestures that could be interpreted by defendant THOMAS as aggressive or threatening nor did Jayvis Ledell Benjamin say anything that would cause defendant THOMAS to fear imminent bodily harm."  (Compl. ¶ 31).  "Clearly, Jayvis Ledell Benjamin had no intent to harm defendant THOMAS or any other person."  (Compl. ¶ 32).  Mr. Benjamin was unarmed.  (Compl. ¶ 34).  According to an official report of the incident prepared by Defendant Thomas Gillis, an officer of the Avondale Estates Police Department ("AEPD"), Mr. Benjamin refused commands to stop and stay in his vehicle.  (Compl. ¶ 35).  Plaintiff alleges that, "[w]ithout provocation, defendant THOMAS pulled his service weapon, a Glock model 22, .40 caliber

2

semi-automatic pistol and fired a single shot at Jayvis Ledell Benjamin that struck him in the chest at a distance of three to four feet." (Compl. ¶ 36). Mr. Benjamin was declared deceased at 6:26 p.m. (Compl. ¶ 39). The manner of his death was determined to be homicide. (Compl. ¶ 43).

Plaintiff alleges that "an internal affairs investigation into the incident was completed without any discipline imposed against defendant THOMAS." (Compl. ¶ 44). Chief Gary L. Broden, Chief of Police of the AEPD, "never recommended any discipline or retraining of defendant THOMAS and/or defendant GILLIS." (Compl. ¶ 45). "[D]efendant BRODEN, on behalf of and pursuant to policies approved by [the City of Avondale Estates ("City")], approves all discipline of all the officers under his command." (Compl. ¶ 46). In accordance with City policy, "all officer-involved shootings are referred to the DeKalb County District Attorney's Office." (Compl. ¶ 47). The District Attorney conducted an investigation into Mr. Benjamin's death. (Compl. ¶ 48). In May 2015, the District Attorney presented information obtained during his investigation to a civil grand jury in DeKalb County. (Compl. ¶ 50). The civil grand jury recommended the case be presented to a criminal grand jury to consider charges against Sergeant Thomas. (Compl. ¶ 51). On March 11, 2016, the District Attorney notified

Plaintiff he would not pursue criminal charges stemming from the killing of Mr. Benjamin.  (Compl. ¶ 53).

B.  Procedural History

On May 20, 2016, Plaintiff filed her Complaint, alleging the following claims:  (1) Count One:  claims under 42 U.S.C. § 1983 for excessive force in violation of the Fourth, Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution, (Compl. ¶¶ 52-55); (2) Count Two:  state law claims for negligent hiring, training, and retention of employment services, (Compl. ¶¶ 56-61); (3) Count Three:  wrongful death, (Compl. ¶¶ 62-64); (4) Count Four: violation of the Georgia State Constitution, Art. I § 1, (Compl. ¶¶ 65-72).  Plaintiff seeks compensatory and punitive damages and attorneys' fees.  (Compl., Prayer for Relief).

On June 29, 2016, Defendants filed their Motion to Dismiss.  Defendants argue that Georgia's two-year statute of limitations on tort claims bars Plaintiff's Section 1983, negligent hiring and retention, and wrongful death claims.  ([12.1] at 2).  They argue that Plaintiff's Section 1983, wrongful death, and Georgia Constitution claims fail to state a claim upon which relief can be granted.  (Id. at 5-7).  Defendants also argue that sovereign immunity bars Plaintiff's claims

4

against the City, and that qualified immunity bars Plaintiff's claims against Sergeant Thomas.  (Id. at 8).

## II.   DISCUSSION

### A.   Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010).  Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).  Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true.  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Mere "labels and

conclusions" are insufficient.  Twombly, 550 U.S. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  This requires more than the "mere possibility of misconduct."  Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible."  Id. at 1289 (quoting Twombly, 550 U.S. at 570).

    B.    Analysis

        1.    Federal Claims

            a)    Section 1983 Official Capacity Claims

Defendants seek to dismiss Plaintiff's Section 1983 claims against the City and her official-capacity claims against Gillis and Broden.  A Section 1983 claim against a government official in his official capacity is, in reality, a suit against the entity that employs the individual.  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1309 (11th Cir. 2009).  Plaintiff's claims against Gillis and Broden in their official capacities are thus claims against the City and are subject to the same analysis as her claims against the City.

A municipality, such as the City, is not, under the *respondeat superior* doctrine, liable under Section 1983 for the acts of its employees.  See Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*." ).  A municipality is only liable under Section 1983 where there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation. City of Canton v. Harris, 489 U.S. 378, 385 (1989); see also Brown, 520 U.S. at 404.

Plaintiff alleges that Defendant Broden, "on behalf of and pursuant to policies approved by, defendant CITY, approves all discipline of all the officers under his command," and that he "never recommended any discipline or retraining of defendant THOMAS and/or defendant GILLIS."  (Compl. ¶¶ 45, 46).  Plaintiff also alleges that City policy requires "all officer-involved shootings [to be] referred to the DeKalb County District Attorney's Office."  (Compl. ¶ 47).  These allegations do not describe any City policy or custom that caused any constitutional deprivation to Plaintiff.  Plaintiff's allegations show the alleged policies were followed, and Plaintiff does not show that the execution of the policies—that is, approving discipline or referring officer-involved shootings to the DeKalb County District Attorney's Office—caused any constitutional deprivation.

7

Plaintiff also alleges that Defendants "conspired to cover-up the unjustified killing," (Compl. ¶ 1), and "by conspiring to keep the truth about his murder hidden from public view, defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States," (Compl. ¶ 53). Plaintiff does not identify any City policy or custom that caused the alleged constitutional deprivations, and does not allege that the City has a policy of using investigations to cover up the use of excessive force. See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1329 (11th Cir. 2015).

Plaintiff, in support of her negligent hiring claim, alleges that the City negligently trained and retained the other Defendant, causing Mr. Benjamin's death. (Compl. ¶ 60). To the extent Plaintiff alleges the City had a custom or policy of inadequately training officers, "[i]n limited circumstances, a local government' decision not to train certain employees . . . to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Weiland, 792 F.3d at 1328 (quoting Connick v. Thompson, 563 U.S. 51 (2011)). "But, 'a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.'" Id. (quoting Connick, 563 U.S. at 1359-60). Plaintiff does not allege any pattern of similar constitutional violations, and

Plaintiff's Section 1983 claims against Defendants City, Broden, and Gillis are dismissed.[1]

                b)        <u>Section 1983 Claims Against Sergeant Thomas</u>

Defendants appear to assert Sergeant Thomas is entitled to qualified immunity against Plaintiff's Section 1983 claims against him in his individual capacity. (See [12.1] at 8). "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Sherrod v. Johnson</u>, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" <u>Edwards v. Shanley</u>, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting <u>Lewis v. City of W. Palm Beach</u>, 561 F.3d 1288, 1291 (11th Cir. 2009)). To meet this burden, a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation." <u>City of W. Palm Beach</u>, 561 F.3d at 1291. This two-step analysis may be done in

---

[1]     Plaintiff does not assert claims against Broden and Gillis in their individual capacities.

9

whatever order is deemed most appropriate for the case.  Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

It is clearly established in this Circuit that "a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands."  Saunders v. Duke, 766 F.3d 1262, 1265 (11th Cir. 2014); see also Perez v. Suszczynski, 809 F.3d 1213, 1222 (11th Cir. 2016) (deadly force is not justified where the suspect poses no immediate threat to the officer and no threat to others (quoting Tennessee v. Garner, 471 U.S. 1 (1985)).

Plaintiff alleges that "[a]t no time did Jayvis Ledell Benjamin make any sudden movements or gestures that could be interpreted by defendant THOMAS as aggressive or threatening nor did Jayvis Ledell Benjamin say anything that would cause defendant THOMAS to fear imminent bodily harm."  (Compl. ¶ 31). "Clearly, Jayvis Ledell Benjamin had no intent to harm defendant THOMAS or any other person."  (Compl. ¶ 32).  Mr. Benjamin was unarmed.  (Compl. ¶ 34). Plaintiff alleges that, "[w]ithout provocation, defendant THOMAS pulled his service weapon, a Glock model 22, .40 caliber semi-automatic pistol and fired a single shot at Jayvis Ledell Benjamin that struck him in the chest at a distance of three to four feet."  (Compl. ¶ 36).  Taking these allegations as true, as the Court

10

must at this stage of the proceedings, Plaintiff plausibly alleges that Sergeant Thomas used excessive force against a suspect who did not pose an immediate threat. Though Plaintiff alleges that "an official report of the incident" stated that "Mr. Benjamin refused commands to stop and stay in his vehicle," (Compl. ¶ 35), Plaintiff does not allege that Mr. Benjamin did, in fact, refuse to obey commands. At this stage of the proceedings, the Court finds Sergeant Thomas is not entitled to qualified immunity against Plaintiff's Section 1983 claims against him in his individual capacity.

2. State Law Claims

a) Wrongful Death

Defendants next argue Plaintiff's Complaint fails to state a wrongful death claim. O.C.G.A. § 51-4-5 provides:

> When there is no person entitled to bring an action for the wrongful death of a decedent under Code Section 51-4-2 or 51-4-4, the administrator or executor of the decedent may bring an action for and may recover and hold the amount recovered for the benefit of the next of kin.

O.C.G.A. § 51-4-5(a). Section 51-4-2 provides: "[t]he surviving spouse or, if there is no surviving spouse, a child or children, either minor or sui juris, may recover for the homicide of the spouse or parent the full value of the life of the decedent, as shown by the evidence." O.C.G.A. § 51-4-2(a). Plaintiff fails to

11

allege that Mr. Benjamin has no surviving spouse or children, and thus fails to allege that she, as the administrator of Mr. Benjamin's estate, has standing to assert a cause of action under Section 51-4-5.  Compare Cooke v. Liles, No. C 12-1844 SBA, 2013 WL 1196990, at *6 (N.D. Cal. Mar. 25, 2013) (finding complaint, which was silent as to whether decedent had any issue, failed to establish plaintiff had standing to sue under California's wrongful death statute) with Estate of Brown v. Ogletree, No. 11-CV-1491, 2012 WL 591190, at *5 (S.D. Tex. Feb. 21, 2012) (under Texas wrongful death statute, which provided that any one or more of a decedent's children, parents, or surviving spouse could bring a cause of action, Plaintiff had standing to pursue claim where she pled she was decedent's biological mother and heir) on reconsideration, sub nom. Estate of Brown v. Cypress Fairbanks Indep. Sch. Dist., 863 F. Supp. 2d 632 (S.D. Tex. 2012).  Plaintiff fails to plead that she has standing to sue under Section 51-4-5, and her wrongful death cause of action is dismissed.

        b)     Sovereign Immunity

Defendants next argue that sovereign immunity bars Plaintiff's state law claims against the City and against Defendants Broden and Gillis in their official capacities.  "Under the Georgia Constitution, the protection of sovereign immunity extends to the state and all of its departments, including counties, and thus protects

county employees who are sued in their official capacities unless sovereign immunity has been waived." Jobling v. Shelton, 779 S.E.2d 705, 709 (Ga. Ct. App. 2015) (internal quotation marks omitted). "Any waiver of sovereign immunity must be established by the party seeking to benefit from that waiver." Id. (alterations omitted).[2]  A claim against municipal employees in their official capacities is a claim against a governmental entity, and is "subject to a claim of sovereign immunity." See Campbell v. Goode, 695 S.E.2d 44, 45 (Ga. Ct. App. 2010). Plaintiff did not identify any waiver of sovereign immunity that applies to this case, and the Court is not aware of any. The City is protected by sovereign immunity from Plaintiff's state law claims, and Plaintiff's state law claims against the City and Defendants Broden and Gillis in their official capacities are dismissed.

        c)        Remaining State Law Claims

Because Plaintiff's state law claims against the City are barred by official immunity, Plaintiff's negligent hiring cause of action—asserted only against the City—is dismissed. Plaintiff's cause of action under the Georgia Constitution

---

[2] "A city can waive its sovereign immunity by purchasing liability insurance if the 'policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy.'" Gray v. Ector, 541 F. App'x 920, 926 (11th Cir. 2013) (quoting O.C.G.A. § 36-33-1(a)). Plaintiff does not allege this exception applies.

(Count Four) is not a cognizable claim. Georgia has "no equivalent to 42 U.S.C. § 1983, which gives a claim against a state officer individually for certain unconstitutional acts." Howard v. Miller, 476 S.E.2d 636, 639 (Ga. Ct. App. 1996). Plaintiff does not identify any statutory or common law claim to support Count Four of her Complaint, and Count Four is dismissed. Because all of Plaintiff's state law claims are dismissed, the Court need not address whether Sergeant Thomas is entitled to official immunity against Plaintiff's state law claims.

### 3. Statute of Limitations

The only remaining claims are Plaintiff's Section 1983 claims against Sergeant Thomas. Defendants argue that Georgia's two-year statute of limitations on tort claims bars Plaintiff's Section 1983 claims, because Plaintiff filed her Complaint more than two years after the January 18, 2013, death of Jayvis Benjamin. ([12.1] at 2). Constitutional claims brought under Section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." Crowe v. Donald, 528 F.3d 1290, 1292 (11th Cir. 2008) (quoting McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008). Plaintiff brought her claims in Georgia, where the governing limitations period for injuries to the person is two years after the right of action

accrues.  Crow, 528 F.3d at 1292 (citing O.C.G.A. § 9-3-33; Porter v. Ray, 461 F.3d 1315, 1323 (11th Cir. 2006)).  Absent tolling, Plaintiff's claims are untimely.

Plaintiff argues that O.C.G.A. § 9-3-99 tolls the two-year statute of limitations.  O.C.G.A. § 9-3-99 provides:

> The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated . . . .

O.C.G.A. § 9-3-99.  Defendant argues that this section applies "only to actions brought by the victim against a criminal defendant that is actually prosecuted." ([14] at 9 (emphasis omitted)).

The Court is required to apply state law as declared by the state's highest court, but when no decision of the highest court is directly on point, the Court must consider decisions of state intermediate courts to determine how the highest court would decide the case.  State Farm Mut. Auto Ins. Co. v. Duckworth, 648 F.3d 1216, 1224 (11th Cir. 2011).  Though the Georgia Supreme Court has not

15

addressed the scope of O.C.G.A. § 9-3-99,[3] the Georgia Court of Appeals has ruled on the issue. Until this year, the Georgia Court of Appeals held that the O.C.G.A. § 9-3-99 tolling provision applies only to a crime victim's claims against someone accused of committing the crime that forms the basis for the suit. See Orr v. River Edge Cmty. Serv. Bd., 770 S.E.2d 308, 310 (Ga. Ct. App. 2015) (citing cases); Harrison v. McAfee, 788 S.E.2d 872 (Ga. Ct. App. 2016) (same). In Harrison v. McAfee, the Georgia Court of Appeals, sitting en banc, reexamined O.C.G.A. § 9-3-99, and reversed its prior holdings, such as that in Orr. In Harrison, the plaintiff was shot in the arm while patronizing a restaurant. The shooter "ha[d] yet to be arrested or prosecuted." Id. at 873. The question before the court was whether O.C.G.A. § 9-3-99 tolled the statute of limitations for plaintiff's claims against the owner of the restaurant. The court found, based on the plain language of the statute, that the tolling provision "applies regardless of whether the defendant in the case has been accused of committing the crime from which the cause of action arises." Id. at 878-79.

---

[3] In Beneke v. Parker, 684 S.E.2d 243 (2009), the Georgia Supreme Court interpreted the term "crime" as it is used in O.C.G.A. § 9-3-99, holding that a violation of one of Georgia's Uniform Rules of the Road constitutes a crime.

16

Because Sergeant Thomas is the only remaining defendant in this action, the question addressed by the Harrison court—whether O.C.G.A. § 9-3-99 tolls claims against those who have not been accused of crimes against the plaintiff—is not the question here.  Rather, the question is whether O.C.G.A. § 9-3-99 tolls claims against alleged perpetrators of crimes during the pendency of an investigation where the investigation does not result in charges.  Though the Harrison court did not squarely address this question, the Harrison decision and other provisions of Georgia law suggest the statute tolls a claim during the pendency of an investigation regardless of the investigation's outcome.  The Harrison court found tolling applied despite that the shooter "ha[d] yet to be arrested or prosecuted."  Id. at 873.  The Harrison court also reasoned that "records related to a pending investigation or prosecution may be relevant to the victim's civil claim against someone other than the perpetrator of the crime.  But those records may be unavailable to a crime victim until that investigation or prosecution is complete." Id. at 877 n.6 (citing O.C.G.A. § 50-18-72(a)(4) (excluding from Open Records Act disclosure requirements law enforcement records of pending investigations and prosecutions)).  The same reasoning applies to the question before the Court.  The victim of an alleged crime may be unable to obtain records relevant to a cause of action during the pendency of an investigation regardless whether the investigation

17

leads to charges.  Indeed, Plaintiff alleges that "[r]easonable efforts to obtain relevant documents, including a videotape of the shooting taken from defendant THOMAS' dash camera, were unsuccessful because, at the time of the request, the District Attorney claimed privilege from disclosure pursuant to the Georgia Public Records law."  (Compl. ¶ 49).

Based on its interpretation of the statute and the Georgia Court of Appeals' en banc decision in Harrison, the Court predicts that the Georgia Supreme Court would find that O.C.G.A. § 9-3-99 tolls a victim's causes of action during the pendency of an investigation of an alleged crime regardless whether the investigation leads to charges.  Because Plaintiff's Section 1983 claims are tort claims that arise out of the facts and circumstances relating to Sergeant Thomas's commission of an alleged crime, Plaintiff's claims were tolled until May 2015, when "the prosecution of such crime or act . . . terminated."  O.C.G.A. § 9-3-99.  Plaintiff's Complaint, filed approximately one year later, was filed within the two year limitations period.[4]

---

[4] On August 16, 2016, Harrison was appealed to the Georgia Supreme Court. McAfee et al. v. Harrison, S17C0093 (Ga. Aug. 16, 2016).  If the Georgia Supreme Court addresses the question whether O.C.G.A. § 9-3-99 tolls an alleged victim's causes of action during the pendency of an investigation of an alleged crime, Defendants may renew their Motion to Dismiss on statute of limitation grounds.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Lynn Thomas, Thomas Gillis, Gary L. Broden, and City of Avondale Estates' Motion to Dismiss [12] is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **DENIED** on Plaintiff's Section 1983 claims against Sergeant Thomas.  The Motion is **GRANTED** on Plaintiff's remaining claims.

**IT IS FURTHER ORDERED** that Defendants Thomas Gillis, Gary L. Broden, and City of Avondale Estates are **DISMISSED**.

**SO ORDERED** this 27th day of September, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE